IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANGELIA M. ANDERSON                  :
                                                      :
         v.                                           :                    CIVIL NO. CCB-08-3
                                                      :
UNITED STATES OF AMERICA       :
                                                      :
                                  ...o0o...

## MEMORANDUM

Now pending before the court is a motion to dismiss filed by the defendant, the United

States of America, against the plaintiff, Angelia M. Anderson.  Ms. Anderson seeks damages,

pursuant to the Federal Tort Claims Act ("FTCA"), for injuries she allegedly sustained as a result

of negligent care she received at the Veterans Administration Medical Center ("VA Hospital") in

Baltimore, Maryland in December 2002.  The United States contends that Ms. Anderson's claim,

filed with this court on January 2, 2008, is barred by Maryland's five-year statutory period for

filing medical malpractice claims.  The issues have been fully briefed and no hearing is

necessary.  For the following reasons, the court will grant the defendant's motion to dismiss.

## BACKGROUND

Ms. Anderson alleges that she received negligent care at the Baltimore VA Hospital in

relation to lymphoma in her spine.  Ms. Anderson first arrived at the VA Hospital complaining of

mid to lower back pain on February 22, 2002.  After an MRI was performed, which revealed

scattered marrow abnormalities throughout Ms. Anderson's lumbar spine, the radiologist

recommended that bone scanning be performed.  On May 13, 2002, a bone scan was performed

and the results were abnormal.  Thereafter, Ms. Anderson continued to be seen at the VA

Hospital on a regular basis and on July 1, 2002, a bone marrow biopsy was performed, the results

of which led to a diagnosis of B-cell lymphoproliferative disease in Ms. Anderson's spine.

1

Accordingly, Ms. Anderson was scheduled to begin chemotherapy on August 26, 2002, and was given a fentanyl patch to control her pain.  Chemotherapy did not begin as planned, however, because her doctors determined that a course of observation was more appropriate.  She was seen again on September 30, 2002, when she reported continued pain on her left side.  Her doctors responded by increasing her pain medication.

On December 19, 2002, Ms. Anderson arrived at the VA Hospital complaining of increasing pain and new symptoms, including pain and numbness radiating to her foot. She was discharged with instructions to report to the neurology clinic in four days.  The next day, Ms. Anderson returned to the VA Hospital after she awoke with increased pain in her back and an inability to move her legs.  An MRI was performed and failed to demonstrate any evidence of compression.  On December 23, 2002, Ms. Anderson again returned to the VA Hospital reporting that she was unable to walk or stand.  She complained that she felt numbness up to the level of her breasts.  She was again discharged and instructed to return on December 26th for another MRI.  Ms. Anderson reported instead to another hospital on December 24, 2002, where a physical examination and diagnostic studies revealed an epidural spinal tumor which was compressing her spinal cord.  She underwent immediate surgery to relieve the spinal compression and remained at the hospital until December 30th.

Ms. Anderson alleges that the VA Hospital failed to recognize the symptoms of progressive spinal cord compression due to an epidural spine tumor which developed as a result of her known cancer.  She alleges that as a result of the negligent care she received at the VA Hospital, she had to undergo emergency surgery on her spine, and she contends that notwithstanding this emergency surgery, the defendant's negligence left her with significant and permanent neurologic deficits, severe and permanent disability, unending pain and emotional

anguish.

On December 17, 2003, Ms. Anderson filed a claim with the Veterans Administration in Baltimore.  Her claim proceeded through the administrative process, including significant settlement discussions, until it was denied as not amenable to administrative resolution by letter dated September 26, 2007.  She filed suit in this court on January 2, 2008.  The government then filed a motion to dismiss arguing that Ms. Anderson had failed to file a claim and an expert certificate with the Maryland Health Care Alternative Dispute Resolution Office ("HCADRO"), as required by Maryland's Health Care Malpractice Claims Act ("HCMCA"), found at Md. Code, Cts. & Jud. Proc. § 3-2A-04.  In a previous opinion, this court stayed the case to allow Ms. Anderson the opportunity to file a complaint and certificate with HCADRO.[1]  Ms. Anderson did so in August 2008, and the stay was lifted on March 26, 2009.[2]

The defendant has now filed a second motion to dismiss, arguing that Ms. Anderson failed to file the present suit within Maryland's five-year statute of repose, as set forth in Md. Code, Cts. & Jud. Proc. § 5-109(a)(1).

## ANALYSIS

The government has moved to dismiss Ms. Anderson's claim for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). A plaintiff may recover against the United States only to the extent it has expressly waived its sovereign immunity. *Welch v. United States*, 409 F.3d 646, 650 (4th Cir. 2005).  Where the United States has not waived its sovereign immunity, a case ordinarily should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).  *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995); *cf. Kerns v. United*

---

[1]    2008 WL 3307137 (D. Md. Aug. 8, 2008).

[2]    2009 WL 890094 (D. Md. March 26, 2009).

*States*, 585 F.3d 187, 195-96 (4th Cir. 2009).  The "scope of a waiver of the Government's

sovereign immunity will be strictly construed . . . in favor of the sovereign."  *Frahm v. United*

*States*, 492 F.3d 258, 262 (4th Cir. 2007) (internal quotation marks and citation omitted).  It is

the plaintiff's burden to "show that an unequivocal waiver of sovereign immunity exists".

*Welch*, 409 F.3d at 651.  "If the plaintiff fails to meet this burden, then the claim must be

dismissed."  *Id*.  On a Rule 12(b)(1) motion a court may consider exhibits outside the pleadings,

and "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the

case."  *Williams*, 50 F.3d at 304.

A.       *Requirements for Filing FTCA Claim*

Congress waived the sovereign immunity of the United States for certain torts committed

by federal employees when it enacted the FTCA in 1946.  *Kerns*, 585 F.3d at 194.  The FTCA is

a limited waiver of immunity, however, and imposes tort liability on the United States only "in

the same manner and to the same extent as a private individual under like circumstances".  28

U.S.C. § 2674.  Thus, the substantive law of each state establishes the cause of action.  *Kerns*,

585 F.3d at 194; *see also Miller v. United States*, 932 F.2d 301, 303 (4th Cir. 1991).  By contrast,

"federal law defines the limitations period" of an FTCA claim.  *Miller*, 932 F.2d at 303.  Here, it

is undisputed that Ms. Anderson complied with the FTCA's statute of limitations.[3]

The government contends that because Ms. Anderson did not file either her complaint in

this court, or her claim in accordance with the HCMCA, within five years of her alleged injury,

she is barred from suit under substantive Maryland law, and therefore barred from bringing an

---

[3]       The FTCA statute of limitations is found in 28 U.S.C. § 2401(b), which states that "[a]
tort claim against the United States shall be forever barred unless it is presented in writing to the
appropriate Federal agency within two years after such claim accrues or unless action is begun
within six months after the date of mailing, by certified or registered mail, of notice of final
denial of the claim by the agency to which it was presented."

FTCA claim.  This is so, the government argues, because Maryland's five-year limit on filing

medical malpractice actions, Md. Code, Cts. & Jud. Proc. § 5-109(a)(1), is a statute of repose, as

opposed to a statute of limitations.  The government suggests that while a Maryland statute of

limitations would not bar Ms. Anderson's FTCA claim, a statute of repose acts as a substantive

right to be immune from suit.  *See First United Methodist Church of Hyattsville v. United States*

*Gypsum Co.*, 882 F.2d 862, 866 (4th Cir. 1989) (explaining that a statute of limitations is a

*procedural* device, whereas a statute of repose creates a *substantive* right to be free from

liability) (emphasis added).  Thus, according to the government, to allow Ms. Anderson's claim

to proceed would impose liability on the government in a different manner than on a private

individual under like circumstances.  *See Cibula v. United States*, 551 F.3d 316, 321-22 (4th Cir.

2009).

Ms. Anderson does not dispute that she filed her FTCA claim more than five years after

the injury was committed[4]; however, she disputes the government's contention that § 5-109(a)(1)

bars her claim.  For the reasons that follow, the court holds that § 5-109(a)(1) is a statute of

repose and bars Ms. Anderson's claim.

B.      *Maryland's Five-Year Statutory Period for Filing Medical Malpractice Claims*

Section 5-109(a) contains both a three-year limit, subject to the discovery rule, and a five-

year limit, providing that "[a]n action for damages for an injury arising out of the rendering of or

failure to render professional services by a health care provider . . . shall be filed within the

earlier of: (1) Five years of the time the injury was committed; or (2) Three years of the date the

injury was discovered."  Md. Code, Cts. & Jud. Proc. § 5-109(a).  The government relies on the

---

[4]      At the latest, Ms. Anderson's injury was committed on December 24, 2002, when she
underwent emergency surgery.  She did not file the present suit until January 2, 2008, just over
five years later.

five-year bar.

On its face, the statute does not deprive a litigant of a right of action.  *Compare id., with*

Md. Code, Cts. & Jud. Proc. § 5-108(a) (establishing that "no cause of action for damages

accrues" for injuries resulting from improvements to property that occur more than twenty years

after the completion of the improvement).  Rather, it limits the period of time in which the

litigant may exercise that right.  *See State v. Sharafeldin*, 854 A.2d 1208, 1214 (Md. 2004).  In

*Hill v. Fitzgerald*, however, one of the Maryland Court of Appeals's first opportunities to

interpret § 5-109, the court concluded that "the words of § 5-109 expressly place an absolute

five-year period of limitation on the filing of medical malpractice claims calculated on the basis

of when the injury was committed, *i.e.*, the date upon which the allegedly negligent act was first

coupled with harm." 501 A.2d 27, 32 (Md. 1985).[5]  *Hill* also held the discovery rule

inapplicable: the five year maximum operates "without regard to whether the injury was

reasonably discoverable or not."  *Id*. at 33.  *Hill*'s holding was repeated by the Court of Special

Appeals in *Edmonds v. Cytology Services of Maryland*, 681 A. 2d 546, 552 (Md. Ct. Spec. App.

1996).  In affirming that ruling, the Court of Appeals referred to § 5-109 as the "medical

malpractice statute of repose".  *Rivera v. Edmonds*, 699 A.2d 1194, 1995 (Md. 1997).  As

recently as January 2010, the Court of Appeals again referred to § 5-109(a)(1) as "the statute of

repose." *Burnside v. Wong*, 986 A.2d 427, 440 (Md. 2010).

It is true that a statute of repose, as compared to a statute of limitations, is "typically an

absolute time limit beyond which liability no longer exists and is not tolled for any reason

---

[5]     *Hill* explained that the purpose of the statute "was to contain the 'long-tail' effect of the
discovery rule in medical malpractice cases by restricting, in absolute terms, the amount of time
that could lapse between the allegedly negligent treatment of a patient and the filing of a
malpractice claim related to the treatment." 501 A.2d at 32.  "The statute is a response to the so-
called crisis in the field of medical malpractice claims . . . and contains no room for any implied
exception." *Id*.

because to do so would upset the economic balance struck by the legislative body." *First United*, 882 F.2d at 866; *Carven v. Hickman*, 763 A.2d 1207, 1211 (Md. Ct. Spec. App. 2000) (quoting *First United*).  Maryland's five-year limit is subject to tolling for fraud, infancy, and incompetence.  *See* Md. Code, Cts. & Jud. Proc. § 5-109(f); *see also Piselli v. 75th St. Med., P.A.*, 808 A.2d 508, 519, 526 (Md. 2002) (holding that both the three- and five-year statutory periods must be tolled during a plaintiff's infancy but also referring to the five-year limit as a "statute of repose").  It also appears that, on occasion, Maryland courts have referred to § 5-109 as a statute of limitations.  *See, e.g.*, *Sharafeldin*, 854 A.2d at 1214.  Nonetheless, particularly in light of the recent reference by the Court of Appeals in *Burnside*, I am constrained to conclude that the state's highest court views § 5-109(a)(1) as a statute of repose.  As the FTCA waives the government's sovereign immunity to make the government liable only "in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, Ms. Anderson's claim unfortunately is barred and this case must be dismissed for lack of subject matter jurisdiction.[6]

A separate Order follows.


| March 30, 2010 | /s/ |
| Date | Catherine C. Blake |
| | United States District Judge |

---

[6]     Contrary to Ms. Anderson's argument, the government is not estopped from having her case dismissed.  "Equitable estoppel against the government is strongly disfavored, if not outright disallowed, because it allows parties to collect public funds in a situation not expressly authorized by Congress."  *Volvo Trucks of N. Am., Inc. v. United States*, 367 F.3d 204, 211 (4th Cir. 2004).  The Supreme Court has observed that "we have reversed every finding of estoppel [against the government] that we have reviewed."  *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 422-23 (1990).  If estoppel is ever justified against the United States, there must be a showing by the plaintiff of "affirmative misconduct by government agents."  *Dawkins v. Witt*, 318 F.3d 606, 611 (4th Cir. 2003).  There has been no such showing in this case and, therefore, the government is not estopped from seeking dismissal based on Ms. Anderson's failure to comply with Maryland's statute of repose.